UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| NATHAN L. FOUNTAINE,<br><br>      Plaintiff,<br><br> v.<br><br>CAROLYN W. COLVIN, Commissioner of Social Security,<br><br>      Defendant. | Case No. 3:14-cv-05035-KLS<br><br>ORDER AFFIRMING DEFENDANT'S DECISION TO DENY BENEFITS |

  Plaintiff has brought this matter for judicial review of defendant's denial of his application for supplemental security income ("SSI") benefits.  Pursuant to 28 U.S.C. § 636(c), Federal Rule of Civil Procedure 73 and Local Rule MJR 13, the parties have consented to have this matter heard by the undersigned Magistrate Judge.  After reviewing the parties' briefs and the remaining record, the Court hereby finds that for the reasons set forth below, defendant's decision to deny benefits should be affirmed and that this matter should be dismissed with prejudice.

FACTUAL AND PROCEDURAL HISTORY

  On March 3, 2006, plaintiff filed an application for SSI benefits, alleging disability as of July 15, 2005, due to depression, anxiety, substance abuse, and scoliosis.  *See* Administrative Record ("AR") 103, 116.  His application was denied upon initial administrative review and on reconsideration.  *See* AR 51-52.  A hearing was held before an administrative law judge ("ALJ") on September 9, 2009, at which plaintiff, represented by counsel, appeared and testified, as did a

ORDER - 1

vocational expert ("VE"). *See* AR 26-50. On September 28, 2009, the ALJ issued a decision in which plaintiff was determined to be not disabled. *See* AR 11-25. The Appeals Council denied plaintiff's request for review (AR 1-5), and plaintiff timely appealed. The Court remanded for further proceedings. AR 550-57.

On October 17, 2013, plaintiff had a second hearing before a different ALJ, where plaintiff and another VE testified. AR 520-44. On November 8, 2013, the ALJ issued a decision in which plaintiff was determined to be not disabled. *See* AR 469-92. The ALJ found that scoliosis, depression, anxiety, and drug and alcohol addiction were severe impairments, but that these impairments did not meet or equal a listed impairment in 20 C.F.R. Part 404, Subpart P, Appendix 1. AR 474-75. The ALJ found that plaintiff had the residual functional capacity ("RFC") to:

> perform light work as defined in 20 CFR 416.967(b) except that the claimant can lift[/]carry ten pounds frequently and twenty pounds occasionally. The claimant can sit, stand and walk for six hours in an eight-hour workday. The claimant needs to be able to sit or stand at will. The claimant can no more than occasionally stoop, bend, crouch, or crawl. He can climb no ramps, stairs or ladders. The claimant can have no contact with the public and no more than occasional contact with coworkers. The claimant is further limited to repetitive predictable tasks.

AR 476. Plaintiff had no past relevant work. AR 486. Considering plaintiff's age, education, work experience, and RFC, the ALJ found that he could perform jobs that exist in significant numbers in the national economy, and therefore was not disabled. *Id.*

It does not appear from the record that the Appeals Council assumed jurisdiction of the case after the second ALJ decision. *See* 20 C.F.R. § 404.984, § 416.1484. Thus the ALJ's decision became defendant's final decision after sixty days. *Id.* On January 13, 2014, plaintiff filed a complaint in this Court seeking judicial review of the ALJ's decision. *See* ECF #1. The administrative record was filed with the Court on April 11, 2014. *See* ECF #10. The parties

ORDER - 2

have completed their briefing, and thus this matter is now ripe for judicial review and a decision by the Court.

Plaintiff argues the ALJ's decision should be reversed and remanded to defendant for an award of benefits because the ALJ erred (1) in discounting plaintiff's credibility; (2) in evaluating the medical evidence in the record; and (3) in finding plaintiff not disabled at step five based on the VE's testimony. For the reasons set forth below, the Court disagrees that the ALJ erred in determining plaintiff to be not disabled, and therefore finds that defendant's decision should be affirmed.

## DISCUSSION

The determination of the Commissioner of Social Security (the "Commissioner") that a claimant is not disabled must be upheld by the Court, if the "proper legal standards" have been applied by the Commissioner, and the "substantial evidence in the record as a whole supports" that determination. *Hoffman v. Heckler*, 785 F.2d 1423, 1425 (9th Cir. 1986); *see also Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1193 (9th Cir. 2004); *Carr v. Sullivan*, 772 F. Supp. 522, 525 (E.D. Wash. 1991) ("A decision supported by substantial evidence will, nevertheless, be set aside if the proper legal standards were not applied in weighing the evidence and making the decision.") (citing *Brawner v. Sec. of Health & Human Servs.*, 839 F.2d 432, 433 (9th Cir. 1987)).

Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (citation omitted); *see also Batson*, 359 F.3d at 1193 ("[T]he Commissioner's findings are upheld if supported by inferences reasonably drawn from the record."). "The substantial evidence test requires that the reviewing court determine" whether the Commissioner's decision is "supported

ORDER - 3

by more than a scintilla of evidence, although less than a preponderance of the evidence is required." *Sorenson v. Weinberger*, 514 F.2d 1112, 1119 n.10 (9th Cir. 1975). "If the evidence admits of more than one rational interpretation," the Commissioner's decision must be upheld. *Allen v. Heckler*, 749 F.2d 577, 579 (9th Cir. 1984) ("Where there is conflicting evidence sufficient to support either outcome, we must affirm the decision actually made.") (quoting *Rhinehart v. Finch*, 438 F.2d 920, 921 (9th Cir. 1971)).[1]

I.  The ALJ's Assessment of Plaintiff's Credibility

Questions of credibility are solely within the control of the ALJ. *See Sample v. Schweiker*, 694 F.2d 634, 642 (9th Cir. 1982). The Court should not "second-guess" this credibility determination. *Allen*, 749 F.2d at 580. In addition, the Court may not reverse a credibility determination where that determination is based on contradictory or ambiguous evidence. *See id.* at 579. That some of the reasons for discrediting a claimant's testimony should properly be discounted does not render the ALJ's determination invalid, as long as that determination is supported by substantial evidence. *Tonapetyan v. Halter*, 242 F.3d 1144, 1148 (9th Cir. 2001).

To reject a claimant's subjective complaints, the ALJ must provide "specific, cogent reasons for the disbelief." *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1996) (citation omitted). The ALJ "must identify what testimony is not credible and what evidence undermines the

---

[1] As the Ninth Circuit has further explained:

> . . . It is immaterial that the evidence in a case would permit a different conclusion than that which the [Commissioner] reached. If the [Commissioner]'s findings are supported by substantial evidence, the courts are required to accept them. It is the function of the [Commissioner], and not the court's to resolve conflicts in the evidence. While the court may not try the case de novo, neither may it abdicate its traditional function of review. It must scrutinize the record as a whole to determine whether the [Commissioner]'s conclusions are rational. If they are . . . they must be upheld.

*Sorenson*, 514 F.2d at 1119 n.10.

ORDER - 4

claimant's complaints." *Id.*; *see also Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993). Unless affirmative evidence shows the claimant is malingering, the ALJ's reasons for rejecting the claimant's testimony must be "clear and convincing." *Lester*, 81 F.2d at 834. The evidence as a whole must support a finding of malingering. *See O'Donnell v. Barnhart*, 318 F.3d 811, 818 (8th Cir. 2003).

In determining a claimant's credibility, the ALJ may consider "ordinary techniques of credibility evaluation," such as reputation for lying, prior inconsistent statements concerning symptoms, and other testimony that "appears less than candid." *Smolen v. Chater*, 80 F.3d 1273, 1284 (9th Cir. 1996). The ALJ also may consider a claimant's work record and observations of physicians and other third parties regarding the nature, onset, duration, and frequency of symptoms. *See id.*

Here, the ALJ provided several clear and convincing reasons for finding plaintiff less than fully credible, including: (1) plaintiff received minimal treatment and no medication for his alleged back pain; (2) plaintiff made inconsistent statements about his prior drug and alcohol use; (3) plaintiff's difficulties finding and maintaining work are related to motivation rather than his mental health impairments; (4) plaintiff's work history undermines his assertion of total disability; (5) plaintiff's activities of daily living are not limited to the extent one would expect given his complaints of disabling symptoms and limitations; and (6) the medical record does not support plaintiff's allegations regarding the severity of his physical or mental impairments. AR 478-85; *see Burch v. Barnhart*, 400 F.3d 676, 681 (9th Cir. 2005) ("The ALJ is permitted to consider lack of treatment in his credibility determination."); *Thomas v. Barnhart*, 278 F.3d 947, 959 (9th Cir. 2002) (evidence of lack of candor regarding drug and alcohol usage supported ALJ's negative conclusions about claimant's veracity); *Osenbrock v. Apfel*, 240 F.3d 1157,

1165-67 (9th Cir. 2001) (ALJ properly discounted claimant's testimony due to evidence of self-limitation and lack of motivation); *Albidrez v. Astrue*, 504 F. Supp. 2d 814, 821-22 (C.D. Cal. 2007) ("An ALJ may properly consider a claimant's poor or nonexistent work history in making a negative credibility determination."); *Tonapetyan*, 242 F.3d at 1148 (ALJ appropriately considers inconsistencies or contradictions between a claimant's statements and his activities of daily living); *Carmickle v. Comm'r of Soc. Sec. Admin.*, 533 F.3d 1155, 1161 (9th Cir. 2008) ("Contradiction with the medical record is a sufficient basis for rejecting the claimant's subjective testimony.").

　　　　Plaintiff challenges only two of these reasons: the ALJ's finding that plaintiff's claims of disabling back pain were inconsistent with the medical record, and the finding that plaintiff's activities were inconsistent with his alleged physical limitations. But even if these two reasons were not supported by substantial evidence, plaintiff fails to establish harmful error in the ALJ's credibility assessment because he does not challenge *all* of the clear and convincing reasons the ALJ provided. *See Carmickle*, 533 F.3d at 1162 (including an erroneous reason among other reasons to discount a claimant's credibility is at most harmless error where other reasons are supported by substantial evidence and the erroneous reason does not negate the validity of the overall credibility determination); *Molina v. Astrue*, 674 F.3d 1104, 1111, 1115 (9th Cir. 2012) (court cannot reverse unless the plaintiff establishes that the ALJ's error affected the ultimate nondisability determination). Indeed, any error would not undermine the ALJ's ultimate credibility determination because substantial evidence supports at least one other reason offered by the ALJ, namely that plaintiff made inconsistent statements regarding his drug and alcohol use. *See Thomas*, 278 F.3d at 959. Specifically, treatment providers believed plaintiff was continuing to use drugs and alcohol while untruthfully minimizing his use. *See* AR 331, 378,

ORDER - 6

481.  The ALJ also pointed out that plaintiff claimed he had not used cannabis since January 3, 2009, but a urinalysis on January 21, 2009, was positive for the drug.  AR 400, 481.  As such, plaintiff does not establish reversible error in the ALJ's adverse credibility finding.

II.     The ALJ's Evaluation of the Medical Evidence in the Record

The ALJ is responsible for determining credibility and resolving ambiguities and conflicts in the medical evidence.  *See Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998).  Where the medical evidence in the record is not conclusive, "questions of credibility and resolution of conflicts" are solely the functions of the ALJ.  *Sample*, 694 F.2d at 642.  In such cases, "the ALJ's conclusion must be upheld."  *Morgan v. Comm'r of the Soc. Sec. Admin.*, 169 F.3d 595, 601 (9th Cir. 1999).  Determining whether inconsistencies in the medical evidence "are material (or are in fact inconsistencies at all) and whether certain factors are relevant to discount" the opinions of medical experts "falls within this responsibility." *Id.* at 603.

In resolving questions of credibility and conflicts in the evidence, an ALJ's findings "must be supported by specific, cogent reasons."  *Reddick*, 157 F.3d at 725.  The ALJ can do this "by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings."  *Id.*  The ALJ also may draw inferences "logically flowing from the evidence."  *Sample*, 694 F.2d at 642.  Further, the Court itself may draw "specific and legitimate inferences from the ALJ's opinion."  *Magallanes v. Bowen*, 881 F.2d 747, 755, (9th Cir. 1989).

The ALJ must provide "clear and convincing" reasons for rejecting the uncontradicted opinion of either a treating or examining physician.  *Lester*, 81 F.3d at 830.  Even when a treating or examining physician's opinion is contradicted, that opinion "can only be rejected for specific and legitimate reasons that are supported by substantial evidence in the record."  *Id.* at

ORDER - 7

830-31.  However, the ALJ "need not discuss *all* evidence presented" to him or her.  *Vincent on Behalf of Vincent v. Heckler*, 739 F.3d 1393, 1394-95 (9th Cir. 1984) (citation omitted) (emphasis in original).  The ALJ must only explain why "significant probative evidence has been rejected."  *Id.*; *see also Cotter v. Harris*, 642 F.2d 700, 706-07 (3rd Cir. 1981); *Garfield v. Schweiker*, 732 F.2d 605, 610 (7th Cir. 1984).

In general, more weight is given to a treating physician's opinion than to the opinions of those who do not treat the claimant.  *See Lester*, 81 F.3d at 830.  On the other hand, an ALJ need not accept the opinion of a treating physician, "if that opinion is brief, conclusory, and inadequately supported by clinical findings" or "by the record as a whole."  *Batson*, 359 F.3d at 1195; *see also Thomas v. Barnhart*, 278 F.3d 947, 957 (9th Cir. 2002); *Tonapetyan*, 242 F.3d at 1149.  An examining physician's opinion is "entitled to greater weight than the opinion of a nonexamining physician."  *Lester*, 81 F.3d at 830-31.  A non-examining physician's opinion may constitute substantial evidence if "it is consistent with other independent evidence in the record."  *Id.* at 830-31; *Tonapetyan*, 242 F.3d at 1149.

Plaintiff challenges the ALJ's evaluation of the opinions of Bryce McCollum, Psy.D., Lawrence Moore, Ph.D., Lawrence Lyon, Ph.D., Amanda Ragonesi, Psy.D., David Morgan, Ph.D., and Jennifer McDonald, M.D.

A.  <u>Dr. McCollum and Dr. Moore</u>

Dr. McCollum conducted a psychological evaluation of plaintiff in March 2002.  AR 176-88.  Dr. Moore evaluated plaintiff a year later in March 2003.  AR 189-94.  The ALJ rejected both opinions because they were "rendered many years prior to the alleged onset date and thus [they] provide[] limited guidance as to the claimant's functional limitations during the time period at issue."  AR 481.

ORDER - 8

Plaintiff contends the ALJ's finding was erroneous because the functional limitations Dr. McCollum and Dr. Moore assessed were similar to those assessed later by Dr. Ragonesi and Dr. Morgan. He also asserts that Dr. McCollum's and Dr. Moore's opinions are "basically uncontradicted" and that the ALJ did not reject them for clear and convincing reasons. ECF #15 at 21. However, "[m]edical opinions that predate the alleged onset of disability are of limited relevance." *Carmickle*, 533 F.3d at 1165. Accordingly, the ALJ properly relied on the fact that Dr. McCollum's opinion was rendered over three years before the alleged onset date and four years before the application date, and the fact that Dr. Moore's opinion was offered two years before the alleged onset date and three years before the application date. Plaintiff does not establish error.

B. Dr. Lyon

Dr. Lyon conducted a psychological evaluation of plaintiff in September 2006. AR 243-47. He diagnosed plaintiff with social phobia; attention-deficit hyperactivity disorder, provisional; learning disorder, not otherwise specified; amphetamine dependence in sustained full remission; alcohol dependence in early full remission; cannabis dependence in early full remission; and paranoid personality traits. AR 246-47. Dr. Lyon also assessed a Global Assessment of Functioning ("GAF") score of 42.[2] AR 247.

The ALJ gave Dr. Lyon's diagnoses and GAF scores little weight, finding that several of the diagnoses were inconsistent with the diagnoses of other providers and that the "GAF score does not square with the generally good mental status examinations, noted improvement with medication and motivation issues." AR 483. Plaintiff argues this finding was erroneous because his performance on the mental status examination with Dr. Lyon was far from "good." Yet, even

---

[2] GAF of 41 to 50 describes "serious symptoms" or "any serious impairment in social, occupational, or school functioning." Diagnostic and Statistical Manual of Mental Disorders 34 (4th ed. 2000).

ORDER - 9

if the ALJ's consideration of the GAF score was erroneous, this alone would not support remand. The GAF score is a "rough estimate" of an individual's psychological, social, and occupational functioning, and is used to assess the need for treatment. *Vargas v. Lambert*, 159 F.3d 1161, 1164 n.2 (9th Cir. 1998). It is not an appropriate methodology, and was not designed to be so, for assessing the severity of a mental impairment or assessing RFC in the context of adjudicating disability. *See, e.g.*, 65 Fed. Reg. 50,746, 50,765-766 (Aug. 21, 2000) (the GAF scale "does not have a direct correlation to the severity requirements in [the Social Security Administration's] mental disorders listings"). Indeed, Dr. Lyon did not assess any specific functional limitations. *See*, *e.g.*, *Turner*, 613 F.3d at 1223 (where physician's report did not assign any specific limitations or opinions in relation to an ability to work, "the ALJ did not need to provide 'clear and convincing reasons' for rejecting [the] report because the ALJ did not reject any of [the report's] conclusions"). Accordingly, the Court finds no reversible error in the ALJ's consideration of Dr. Lyon's opinion.

C. Dr. Ragonesi

Dr. Ragonesi evaluated plaintiff twice.[3] In July 2009, she diagnosed plaintiff with major depressive disorder and polysubstance dependence in sustained partial remission. AR 695. She assessed a GAF score of 40 and opined:

> Symptoms of depression are markedly impacting his functioning. At the present time, it is unlikely that Mr. Fountaine would be able to function appropriately in a typical work setting. He is likely to respond to minimal stress with increased symptoms of depression. This, in turn, is likely to interfere with his ability to sustain concentration necessary for learning work related tasks. He has a history of exercising poor judgment in his personal life. Vegetative symptoms of

---

[3] Plaintiff asserts that Dr. Ragonesi was a treating psychologist; however, the record establishes that she was an examining source. *See* AR 692 (Dr. Ragonesi's 2009 report, indicating that plaintiff was referred to her for a diagnostic evaluation), 686 (Dr. Ragonesi's 2010 report, indicating that plaintiff was not eligible to receive treatment from her agency).

> depression, a preference for social withdrawal, and irritability are likely to negatively impact his social functioning and ability to adapt to new situations.

AR 694-95.

In August 2010, Dr. Ragonesi reaffirmed her prior diagnoses, assessed a GAF score of 45, and offered an opinion that was similar to her prior assessment:

> Results from psychological testing are reflective of relatively intact cognition. However, depressive symptoms continue to be a barrier to Mr. Fountaine's ability to maintain employment. He expressed a preference for social withdrawal, which is likely to negatively impact his social adaptation in a variety of settings, including a typical work setting. Further he is prone to respond to additional stressors with increased depression. This, in turn, is likely to interfere with his ability to sustain concentration necessary for learning work related tasks.

AR 690-91. Dr. Ragonesi also opined plaintiff had moderate limitations in his ability to understand, remember, and carry out complex instructions; learn new tasks; exercise judgment and make decisions; relate appropriately to co-workers and supervisors; interact appropriately in public contacts; and maintain appropriate behavior in a work setting. AR 685. She further opined that plaintiff had marked limitations in his ability to respond appropriately to and tolerate the pressures and expectations of a normal work setting. *Id.*

The ALJ gave Dr. Ragonesi's opinions little weight because they did "not square with the claimant's generally good mental status examinations, noted improvement with medication and motivational issues." AR 484. An ALJ may discount an opinion that is inconsistent with the medical record. *Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008).

Plaintiff's only argument with respect to the ALJ's consideration of Dr. Ragonesi's opinions is that "Dr. Ragonesi did not opine that the results of Fountaine's [mental status examinations] were 'within normal limits,' yet this is used as the basis for the ALJ's rejection of her opinion." ECF #15 at 23. Plaintiff misapprehends the ALJ's reasoning. The ALJ found that Dr. Ragonesi's opinions generally were inconsistent with the numerous mental status

ORDER - 11

examinations contained in the record, not that they were inconsistent with the mental status examinations Dr. Ragonesi performed. AR 484. The ALJ summarized a number of the mental status examinations in the record, which indicated that despite plaintiff's mental health symptoms, his cognitive abilities were consistent with unskilled employment. AR 480. For example, in August 2006 and May 2007, plaintiff was sad and anxious, but his short-term memory was good, he had logical stream of thought, and fair attention and concentration. AR 241-42, 311-12. Although some mental status examinations perhaps suggested greater difficulties, *see* AR 245, the ALJ is responsible for resolving conflicts in the medical record, *Carmickle*, 533 F.3d at 1164, and when evidence reasonably supports either confirming or reversing the ALJ's decision, the Court may not substitute its judgment for that of the ALJ, *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999). Because substantial evidence supports the ALJ's finding that Dr. Ragonesi's opinions are inconsistent with the medical record, plaintiff fails to establish reversible error.[4]

   D. Dr. Morgan

Dr. Morgan examined plaintiff three times. In July 2011, he diagnosed plaintiff with major depressive disorder, assessed a GAF score of 40, and opined plaintiff had a number of moderate and marked functional limitations that would last a maximum of eight months. AR 677-81. In February 2012, Dr. Morgan again diagnosed major depressive disorder, assessed a GAF score of 45, and opined plaintiff would have difficulty staying motivated in a work setting and communicating with coworkers. AR 673-76. Dr. Morgan opined plaintiff's impairments

---

[4] Even if substantial evidence did not support the ALJ's finding, plaintiff would not have established that the error was harmful because plaintiff does not challenge the ALJ's finding that that Dr. Ragonesi's opinions were inconsistent with evidence that his symptoms improved with treatment. *See Carmickle*, 533 F.3d at 1162. As noted by the ALJ, there are numerous reports in the record that medication, treatment, and sobriety improved plaintiff's mental health symptoms. *See* AR 479.

ORDER - 12

would last seven months.  AR 674.  In August 2012, Dr. Morgan reiterated his diagnosis of depression, assessed a GAF score of 40, and opined plaintiff had moderate and marked functional limitations that would last eight months with the available treatment.  AR 629-32.

As with Dr. Ragonesi, the ALJ gave Dr. Morgan's opinions little weight because they did "not square with the claimant's generally good mental status examinations, noted improvement with medication and motivational issues."  AR 484.  Plaintiff argues the ALJ's finding is erroneous because the ALJ did not mention the GAF scores Dr. Morgan assessed or Dr. Morgan's opinions regarding his marked and moderate limitations.  Plaintiff, however, fails to establish that the ALJ committed harmful error in evaluating Dr. Morgan's opinions.  First, plaintiff does not directly challenge any of the ALJ's facially legitimate reasons for rejecting Dr. Morgan's opinions.  Thus plaintiff does not establish that the ALJ's opinion lacks the support of substantial evidence.  *See Molina*, 674 F.3d at 1111, 1115 (court cannot reverse unless the plaintiff establishes that the ALJ committed harmful error).  Furthermore, Dr. Morgan never opined that plaintiff's limitations would last more than eight months, which falls short of the 12-month duration requirement of the Social Security Act.  *See* 20 C.F.R. § 416.909; 42 U.S.C. § 423(d)(1)(A).  As such, any error would not affect the ultimate nondisability determination.  *See Molina*, 674 F.3d at 1115.

E.  Dr. McDonald

In September 2013, plaintiff visited Dr. McDonald at the suggestion of his attorney for an assessment of his scoliosis.  AR 696.  Dr. McDonald diagnosed scoliosis, noting that it was severe in the thoracic region.  AR 698-99.  On examination, plaintiff had normal range of motion in his spine and right upper extremity, "restricted" range of motion in his left shoulder but no pain, and normal strength in all of his extremities.  *Id.*  Dr. McDonald stated, "It certainly seems

ORDER - 13

that working w/ weights in upper extremities (eg. construction or washing dishes) would be difficult and probably painful w/ the severity of his scoliosis." *Id.*

The ALJ gave Dr. McDonald's opinion little weight because it was inconsistent with plaintiff's lack of treatment, mild findings on examination, and suggestion that the treatment was sought only at the behest of plaintiff's lawyer and in conjunction with his attempt to obtain SSI benefits. AR 478. Plaintiff challenges all of these reasons and suggests that the error was harmful because Dr. McDonald opined that his scoliosis would "perhaps preclude his finding gainful employment." ECF #15 at 20. However, even assuming the ALJ erred as plaintiff argues, he does not establish that the error would be harmful. Contrary to plaintiff's assertions, Dr. McDonald's opinion does not establish plaintiff's inability to work. Rather, she merely opined plaintiff would have limitations working with weights in his upper extremities in jobs such as construction or dish washing. AR 699. The RFC limiting plaintiff to light work is entirely consistent with this opinion. *See Turner v. Comm'r of Soc. Sec.*, 613 F.3d 1217, 1223 (9th Cir. 2010) (ALJ need not provide reason for rejecting physician's opinions where ALJ incorporated opinions into RFC; ALJ incorporated opinions by assessing RFC limitations "entirely consistent" with limitations assessed by physician). Accordingly, any error in the ALJ's consideration of Dr. McDonald's opinion was harmless. *See Molina*, 674 F.3d at 1115.

III.    The ALJ's Findings at Step Five

If a claimant cannot perform his or her past relevant work, at step five of the disability evaluation process the ALJ must show there are a significant number of jobs in the national economy the claimant is able to do. *See Tackett*, 180 F.3d at 1098-99; 20 C.F.R. § 404.1520(d), (e), § 416.920(d), (e). The ALJ can do this through the testimony of a VE or by reference to

ORDER - 14

defendant's Medical-Vocational Guidelines.  *Tackett*, 180 F.3d at 1100-1101; *Osenbrock*, 240 F.3d at 1162.

An ALJ's findings will be upheld if the weight of the medical evidence supports the hypothetical posed by the ALJ.  *See Martinez v. Heckler*, 807 F.2d 771, 774 (9th Cir. 1987); *Gallant v. Heckler*, 753 F.2d 1450, 1456 (9th Cir. 1984).  The VE's testimony therefore must be reliable in light of the medical evidence to qualify as substantial evidence.  *See Embrey v. Bowen*, 849 F.2d 418, 422 (9th Cir. 1988).  Accordingly, the ALJ's description of the claimant's disability "must be accurate, detailed, and supported by the medical record." *Id.* (citations omitted).  The ALJ, however, may omit from that description those limitations he or she finds do not exist.  *See Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001).

At the hearing, the ALJ posed a hypothetical question to the VE containing substantially the same limitations as were included in the ALJ's assessment of plaintiff's RFC.  *See* AR 540.  In response to that question, the vocational expert testified that an individual with those limitations—and with the same age, education, and work experience as plaintiff—would be able to perform other jobs.  *See* AR 541.  Based on the testimony of the VE, the ALJ found plaintiff would be capable of performing other jobs existing in significant numbers in the national economy.  *See* AR 487.

Plaintiff argues the ALJ committed harmful error by rejecting the opinion of the VE that plaintiff would not be able to maintain employment if he missed work two times a month.  *See* AR 542.  The ALJ, however, did not err because he did not find that plaintiff's impairments would cause him to miss work.  *See Rollins*, 261 F.3d at 857.  Accordingly, plaintiff fails to establish that the ALJ's step five finding is not supported by substantial evidence.

CONCLUSION

Based on the foregoing discussion, the Court hereby finds the ALJ properly concluded plaintiff was not disabled. Accordingly, defendant's decision is AFFIRMED and this matter is DISMISSED with prejudice.

DATED this 8th day of September, 2014.

Karen L. Strombom
United States Magistrate Judge

ORDER - 16